The next case in our call this morning is agenda number four, case number 108459, People in the State of Illinois v. Mark A. Close. As soon as we settle down, counsel may proceed. Give yourself just a minute. Thank you, Your Honor. May it please the court, counsel? My name is Douglas Olivero, and I represent Mark Close, the defendant appellant. The trial court was correct in granting Mr. Close's motion to quash and suppress. The third district's court should be reversed because, one, the officer lacked the reasonable, articulable suspicion necessary to justify initiating a traffic stop at Mark Close. Two, affirming the holding of the third district appellate court would provide for suspicious list stops of vehicles for inspections of permits and licenses. And third, raising of a statutory construction issue by the third district appellate court was improper, and the state's attempt to raise such an argument for the first time before this court is also improper. Briefly, the facts of this case are, Officer Belsky, with 12 years of law enforcement experience, was on routine patrol on Sunday, June 24, 2007, at 7.13 p.m. At that time, he conducted a registration check on a pickup truck using his squad car's mobile data computer. Officer Belsky learned that the registered owner, Mark Close, had a revoked driver's license. However, he also learned that Mr. Close had a restricted driving permit. Officer Belsky Can I stop you there for just a moment? Yes, Your Honor. Is it accurate that a restricted driving permit is not an element of the offense driving under a suspended or revoked license? That is correct. And it is, as a matter of fact, it is not the element of any misdemeanor or felony charged in the state of Illinois. That's correct. However, the fact that a person has a restricted driving permit goes to the issue about whether a police officer has reasonable or tickable suspicion to stop and conduct a further investigation. Mr. Oliveiro? Yes, Your Honor. Just following up on Chief Justice's question, are we left with just a simple question then of whether this court believes that an RDP is an affirmative defense? No, an RDP is not an affirmative defense. I'm not sure I want you to answer that question, but I'm asking if this court disagrees and agrees, I think, with the state's position that it is an affirmative defense, does that end this case? No, it does not, because I still think you have to take a look at the facts and circumstances that the officer had at the time. The fact that if you take the 3rd District's decision, that being that they can stop a person to a lot of other situations in a case where... Don't they get, according to the earlier pronouncements, don't they get to limit the proof to whether or not the accused is driving on a revoked or suspended license? And that's where you have to look and see whether there's a reasonable suspicion of that, not the RDP. I think you're correct, Chief Justice, that you're dealing with a situation where there first of all has to be a reasonable, articulable suspicion to stop the vehicle, you know, and to check. The law holds that to be able to stop a vehicle, you're going to have to see whether or not the driver's license is unlicensed. If the computer, if the investigation reveals on the police computer that the driver's, or the license plate they see is assigned to a person who is on a drive, who has a suspended or revoked license, would that give the police the opportunity to stop that driver? I think quite clearly if, and we talk about it in our brief, that if in fact the police through their mobile data computer run a check, find that the registered owner is in fact revoked, and that in itself is sufficient for the police to conduct an investigative stop. However, that's not the facts of this case, and it further says that when it looks through his computer, he finds out what, that a person has a restricted driving permit. It is our position it's not unreasonable for the information, that being the terms of the RDP, to also be available to the officer at that time. This is basically the heart of this whole case. What is the stop being made for? It has to be made for an actual charge, not something other than that. To see whether or not a person is a fact. You can lawfully stop a person if you have a reasonable suspicion to believe that he's committed a traffic violation. That's correct, but having a valid RDP is not a basis to be stopped to check the permit. The Secretary of State... I don't understand that. And I guess I'm having a hard time getting to the point where I can understand why the RDP, proof of the RDP is necessary to stop a person from driving on a suspended or revoked license. It is our position that under the Fourth Amendment, the right to reasonable search and seizures, if you have a situation where a person who has a valid RDP, and you know what the terms and conditions are, it does not allow the police officer to then stop the individual... So you make it a Fourth Amendment issue solely, is that right? Yes, we do. Can you think of any circumstances under which an officer could make such a stop? Yes, I do. I do, Justice. And that would be is that the officer, using his onboard mobile computer, checks and finds out the individual is unlicensed, finds out he has a restricted driving permit. He's advised that that restricted driving permit is for Monday through Friday from 8 a.m. to 5 p.m. That doesn't appear. That information, we believe, in a search of this Court, should be available to the officer. You find out at any time... Suppose there's a restriction on driving. You cannot drive without wearing eyeglasses. That's exactly an excellent question also. I think taking the Third District's case to its logical conclusion is that that also permits police officers to then stop an individual solely for no reason other than to be able to see if they have their corrective lenses. And that is impermissible also. Because basically what we're doing is then allowing a further step to do... Suppose he's wearing no glasses. Again, it is our position that the Third District case incorrectly decided would allow them to be able to do that, to stop for anything. And then further after that would allow... You're not in agreement with the officer enhancing his position by saying here's why he does not have an RDP now? No, I'm not enhancing the officer's answer about that. But I'd like to go back and answer the one question about if you have a... You're required to have on you at all times your license. If you're making it further, that means every officer can stop every motorist without any basis whatsoever to see if they have, in fact, a possession. This then leads to unreasonable searches and seizures and random stops, which is a violation, I think, of people... Delaware versus Pruess. Don't we have that, though? Don't we allow officers... Don't we allow them to have roadside checks or stopping all the traffic to see if the drivers have licenses and registrations for their cars? Well, that fact pattern is different from the fact pattern here before. I understand that. There's nothing stopping to have a roadside safety check in which it's been determined, it's been publicized, and there's no discretion whatsoever that everyone who goes through this roadside safety check will be checked to verify their driver's license, insurance, see whether or not they're wearing their seatbelt. But that's not the case here. What you're saying now is that the officers, without any on their own, they can just subjectively, randomly, without any routine, reasonable, articulable suspicion, stop a vehicle for no other reason than just to check their documents. What if it had been 2 a.m.? What if it had been 2 a.m. in the facts of this case? Would that have been enough? I think, again, if the Secretary of State has the capability, one, to tell the police, one, that an individual has a license, two, they are revoked, and three, they have a restricted driving permit, it's not unreasonable for the officer to know the terms and conditions of that permit are. Again, there are people at work at 2 o'clock in the morning. I understand that there may be a likelihood that the majority of people may not be working, but it still does not remove the situation that people could be driving under restricted driving purposes for many purposes. Some of those situations they deal with, people can receive restricted driving permits for work, for medical care, for transportation, to support meetings, for education, child care, there's a lot of other things that a restricted driving permit can be used for. Why wouldn't this be treated more as a seizure type of issue where, you know, he does a check, the license is revoked, he does a stop, and again, back to the affirmative defense, only in the context of the stop itself, the driver says, here's my permit, you know, I'm allowed to drive, and the officer lets him go. And if he detains him longer after that, it's a seizure, or at least a seizure analysis at that point. But why should an officer not be entitled to stop someone when he sees that their license revoked and has no other information? Well, when you said his license is revoked, but in this case, the officer is also aware that he has a restricted driving permit. And wasn't it a Sunday? Yes, it was Sunday at about 7, 13 p.m. But that time and date, or I should say, the only factors this officer had in making the stop was the day, the time, and the clothing of the individual. And that, in and of itself, isn't sufficient to give the officer a reasonable articulable suspicion, which warrants the officer to make a stop in this situation. And like I said earlier, the heart of this case has to do with the information of the RDP, which is readily available. When officers make stops, it's not uncommon for... It's readily available. Where does that come from? From the Secretary of State, Chief Justice. The Secretary of State advises the police on whether a person is licensed, what the restrictions are on their license, whether or not they are revoked. Is there evidence of this in the record? That I'm not sure. I do not believe that they said that the officer said they had information that the individual's license was revoked and he had an RDP. That information comes from the Secretary of State. But I don't know if specifically the officer said that, but he said when he made a check with his computer, that's the information that he had, but did not know what the terms and conditions of his RDP were. And like I said, there are many reasons why the Secretary of State, another arm of the government, that can provide licensing. Is it like a Terry stop? It is a Terry stop. But in this instance, in this Terry stop, you have to have reasonable suspicion of something that is not a crime. That's correct. It has no elements of an offense. That's correct. It's not a crime to be driving with an RDP. It's not a crime to be driving with an RDP, provided that you're within the terms and conditions of that RDP. To just on a hunch say that the person is not within the terms of his RDP, you know, as a Terry stop. The officer referred to his feelings as a hunch. That's correct. I still think that there's an objective standard in looking at what the facts of the case were, the dress and the time of day. We may disagree or agree that that raises a reasonable suspicion. But the fact that the officer said, I had a hunch, is immaterial to those other factors, isn't it? I don't, I think that the officer's hunch tells you overall what he believed at this time. It wasn't that he enumerated that the reason I'm stopping because of the day, the time, the clothing. He basically said it was a hunch, guessing that on Sunday at 7 p.m. a person would not normally be driving within the parameters of an RDP. However, the RDP can be issued for many different things for many purposes. It's not unreasonable that a person can be driving to work on Sunday at 7 o'clock or going to medical care or going to any type of support meetings and all that nature. Therefore, it grants them an opportunity to have a restricted driving permit. Just a little bit. Is the command of the case that you would like us to issue that if an officer's going to stop somebody for an RDP, he has to have some specific information about that? Yes. Specific information concerning the RDP. And if he doesn't, he can't stop it? No, he does not. Have you looked at other states and how this issue has been resolved? I'm unaware of anything in any other state. The Minnesota Supreme Court would support, or rather what the appellate court did in this case. And that seems to be true in other states as well. Massachusetts, Michigan, even across the nation. Most courts, state courts, have gone in support of the position taken by the appellate court here. Do you have any states? I do not. I do not. But I still think when you take a look at the factors in this case, that when you talk about, when you ask about those factors, the officer takes into consideration, I think there has to be more than what was placed in this case. And that is the fact that an individual is driving on a Sunday. A Sunday doesn't mean that people aren't working on that. No, but it enhances the possibility. Well, the possibilities can be enhanced by any fact that you want to take. Exactly. But I don't, I think it's unreasonable to assume that the police officers can just stop individuals on hunches to be able to check to see if they're in fact, they're in compliance with a restricted driving permit when the technology is available to provide to the officer. Is it better to look at an objective standard than to look at hunches? Well, I think it's always better that we have an objective standard. But in this case, the officer did not have, did not exercise any objective standard. Well, he did have these other factors that we've talked about here. Time of day, time of dress. And those are significant factors. And granted, a person could legitimately have a restricted driving permit and be in one of these classes. But it does, as we heard in an earlier argument, narrow the class. Correct. Considerably narrow the class, I think, with time of day considerations. But I still think you have to take a look at what this officer had in this particular case. And he did not have a reasonable, articulable suspicion to stop Mr. Close. And you also take a look at the situation if you take the appellate courts. You couldn't consider in our case how close was, or how, yeah, how Mr. Close was dressed in the time of day that he was driving? We may agree or disagree that that's enough. That's true. I think it's a factor that the officer could take. But we can also testify that he... The only way you could take it is if he announced that he took those things in making his opinion. Correct. But if they're objectively in the case, you can't consider them? Well, I think that, again, it goes to the officer. The question is at the officer's time when he did it. When you take a look at what the officer possessed, his knowledge at the time, based upon his experience, believing that there may be some type of criminality that goes into it. In this case, there wasn't any indication, based on his experience, not knowing all the purposes of a restricted driving permit, what they can be used for, for different purposes, that it may not be unreasonable to drive on a Sunday at 7.10 or 7.13 p.m. in his article of clothing. The officer did not know whether or not he had clothing in his car, whether he was coming from work, going to work, whether or not he just changed his clothes from work, or he'd go to work and put on certain clothes. So I don't believe that that is sufficient to stop an individual. Can we get back to where we started here? You've just been addressing, I think, the second argument of the state, and that is the particular facts of this case, as to whether what the officer had at his disposal. But I want to go back to this affirmative defense. You agreed earlier in a question asked by Chief Justice that the state does not have to prove that there was not a valid RDP to prove up a revocation of license, right? I mean, you agree with that. I agree that an RDP, this is not an affirmative defense, because if you take a look at affirmative defense. Well, wait, let me ask the question. Do you agree with what I said, though? The state would not have to prove, in a driving with license revoked case, that there was not a valid RDP in place, right? That's not an element of driving with license revoked, right? That's correct. But let me just ask the question. So you're holding the officer to something that the state wouldn't have to prove at trial, right? Namely, he has to go out and make sure there isn't a valid RDP in place when he's aware of a driving with license revoked and he can't make the stop. Now, it either, if they don't have to, it's something, right? That portion, the valid RDP or lack of a valid RDP is something. It's some type of animal. They don't have to prove it as part of their case in chief. Is it not an affirmative defense? I know I'm going back to where we started, but isn't it an affirmative defense for the defense to show? And if such, and if the state doesn't have to show it, does the officer have to know it? In that situation. I'm a little like Jesse Jackson, but I didn't mean to do that. No. What happens, though, we would never get to the stage, because if you have a valid restricted driving permit, you're not in a trial setting. The statute provides that. It removes it. I think when you take a look at the enactment of driving while revoked, the section that deals with a person operating a motor vehicle at the time his license is revoked, it says except with a valid RDP. When you have a valid RDP, you never get to the issue. You would never be in trial arguing about an affirmative defense because the person is valid. You know, easily on a motion to a motion. Can't we presume that what could happen in that case, though, is that the driver shows the officer the restricted driving permit and is just simply sent on his way? That is probably the second or the after aspect of what we believe should be addressed, and that's the first aspect of that. Does the officer have, as we've talked about, reasonable, articulable suspicion to even stop the individual? Clearly, if this court believes that you can stop an individual, if the secretary of state or the driver finds out the person has a restricted or is unlicensed, stop them, inquire upon that. But then we're eroding the first prong of this, and that is that the officer must have reasonable, articulable suspicion that the person's committing a crime, the person's unlicensed, or the vehicle's unregistered. I think that's pretty much the state of the law here. So the situation is, in this case, the vehicle was registered. There's no other indications of any type of criminality. The only issue is whether or not the individual is licensed. The secretary of state's the one that gives licenses. The secretary of state gives restricted driving permits. The person after being, you know, or the purpose of the restricted driving permit is after they meet the requirements of the secretary of state and are issued a valid restricted driving permit that allows them to drive. The question then becomes whether or not law enforcement, just knowing the fact that the person's revoked, gives them the opportunity to stop them without any other factors showing that there has to be a reasonable, articulable suspicion that the criminality of the person's unlicensed. And all this can be removed by providing the information on what the terms and conditions of the restricted driving permit are. By doing that, there would not be an argument in this case, because the officer would know clearly if this was a case where he wasn't unauthorized to drive on Sunday, was outside the parameters, and would allow him to be given reasonable, articulable suspicion to stop the vehicle. Thank you. Counselor, Mr. Oliver, I didn't want to make light of your argument. My Jesse Jackson reference was obviously in reference to how he rhymes a little bit better than I do when I ask a question. But I am interested maybe when you come back on rebuttal on this whole affirmative defense idea, and maybe if you can talk a little bit more about that as to why, as I asked earlier, why this isn't a seizure situation and not a search situation. Yes, Justice, I will. Go ahead. Good morning, Your Honors. Erica Seaborn from the Illinois Attorney General's Office on behalf of the people of the State of Illinois. May it please the Court. This Court should affirm the appellate court's holding for two reasons. The police officer here had reasonable suspicion that the defendant was driving outside the terms of his RDP, so he was justified in executing a Terry stop. Counsel, why did he characterize it as a hunch then? Well, Your Honor, I think that he characterized it as a hunch because he was responding to a very leading question from defense counsel, who I believe asked him, so you had a hunch that the defendant was committing a crime. But I don't think that what the Sergeant Belsky had here was even a hunch. The Terry court defined a hunch as an inchoate and unparticularized suspicion. And Sergeant Belsky then went on to lay out, here are the facts that led me to believe that he was committing a crime. He was able to articulate what those facts were. So even by Terry's definition, it wasn't a hunch. I think that his use of the word hunch, if it indicates anything, it just indicates that Sergeant Belsky wasn't aware that the word hunch raises a red flag for reviewing appellate courts. The second reason that this Court should affirm the appellate court's judgment is because the officer was not required to have suspicion about the existence of the RDP. The absence of a restricted driving permit isn't an element of the crime of driving while license revoked. It is instead an affirmative defense. I'd like to begin by addressing the reasonable suspicion issue. The Terry court recognized that the purpose of a Terry stop is investigatory. It's to facilitate the gathering of facts in situations in which the officer doesn't know enough to have actual probable cause. As the U.S. Supreme Court stated in United States v. Socolow, reasonable suspicion is a lower threshold than probable cause. It's considerably less than proof by a preponderance of the evidence. But Counsel, doesn't that really bring us to a situation where you're allowing to stop any drivers for an RDP for routine spot checks then? Just based on that? Yes. If this Court affirms our statutory argument, the argument that the holding of the appellate court that the RDP is an affirmative defense and it's not an element of the crime, the officers would be able to conduct these brief investigatory stops to ensure On any RDP? Yes, in order to ensure what the terms of the RDP are and whether or not the person is complying with them. Could we change it to information through the media set up that there was a reasonable evidence that he was charged with driving on a revoked or suspended license? I'm sorry, I'm not sure I understand your other question. I didn't understand it either. You could have on the computer the fact that the license had been suspended. That could happen. You would like me to address the computer? Under those circumstances, would there be any situation in which the officer could not make a stop? If the officer's computer reflected that the person's license had been revoked, then the officer would have reasonable suspicion that the person was driving on a revoked license. But that's actually even less information than Sgt. Felski had here. Driving on a revoked license doesn't necessarily, and if you have an RDP and that's what the computer showed, that's not illegal, it's actually legally driving. If you have a valid RDP, then you're not going to end up being convicted of a crime. No, but you'd still get stopped. Yes. You'd have to go through the process of defending yourself. Yes, but the U.S. Supreme Court, when it carved out the exception for Terry stops, recognized that even though there are situations in which completely innocent conduct can give rise to reasonable suspicion, a stop can be valid at its inception even if the person isn't committing a crime. So even if a person had, as it turns out, a completely valid RDP and they're driving within its terms, the officer could still have reasonable suspicion that the person was committing a crime. But the court allowed the RDP. I'm sorry, I don't understand. Courts allow them to have people drive on this kind of a license. It's legal. Yes, the Secretary of State has the discretion to offer that. The next step would be stopping anybody with a license for any reason, a bailed license. Well, Your Honor, I don't know that you would actually get reasonable suspicion to do so because in this particular case, the information that the officer had before he even executed the stop was only a hunch. But what was it, though? Just that he was driving on this RDP, that was the only hunch he had. First of all, I, of course, take exception to the characterization as a hunch. I think that what he had was far more than that. But those are his words. Yeah. That was the words that was put into his mouth. But what he stated was the basis, the facts that we know from his testimony about why it is that he pulled the person over was, he knew from his computer that the registered owner of the vehicle had a revoked license. He was able to match a photograph of the registered owner of the vehicle with the person who was actually driving the vehicle at the time. He knew that it was a Sunday evening, and he stated that from his experience, he knew that RDPs were generally issued for work purposes. I'm a little bit confused on this. I thought when he said hunch, he was not referring to the existence of the RPD. No, I don't. He knew that that existed. Yes. The computer indicated that he had a revoked license and an RDP. It just didn't tell him what the RDP's terms were. And as long as we're talking about the computers, the defense counsel argues that it would have been easy for the police officer to verify what the terms of the RDP were by calling the secretary of state's office or somehow reconfiguring the police department squad car computer so that they would give out this information. It's not in the record whether or not this information was available or how easy it was to get it. But we do know he had no information. We know that he did not know what the terms of the RDP were. But his hunch was only his own opinion that people work 9 to 5. And that necessarily isn't true in today's world. No, it's not true. And it could have been for medical reasons or some other reason. So I don't know what his hunch was based on. The fact that the officer didn't know or didn't specify all the other reasons why an RDP could be granted under the secretary of state statute doesn't affect the reasonable suspicion inquiry. It's an objective test as Justice Fitzgerald's earlier questions pointed out. Even if the, even if Sergeant Belsky had known all of the other possible reasons why an RDP could be issued, he would still have reasonable suspicion to stop, investigate what the terms of those RDPs were and whether or not the defendant was complying with them. Let's assume for the sake of argument that it were possible for the police departments to reconfigure their computers so that they would have RDP terms. We don't know whether or not that's possible. And certainly the courts. Well, that's not before us. Exactly. But let's assume that the officer did know what the terms of the RDP were. If the RDP were written for defendant may drive on Sunday evenings for work purposes, the officer still wouldn't necessarily know since he was just on a routine patrol running license plates. He wouldn't know whether the defendant was actually working on a Sunday evening. And the best way to find that out is to affect a brief investigatory stop. It's Terry stop. Supreme Court has recognized that the purpose of the Terry stops is to allow for these brief investigations. They'll either confirm or dispel probable cause. If he pulled the defendant over and the defendant said, look, here's my RDP. It allows me to work on Sunday evenings. I'm on my way to my, you know, shift at the factory right now. That would dispel suspicion and the stop would be over and the defendant would be on his way. Uh, and in any event, uh, even if the officer did not have that information, um, precedent indicates that the availability of less intrusive investigatory means doesn't vitiate reasonable suspicion. We don't require police officers to call the secretary of state's office to investigate these things when he can get the same information just by doing a brief Terry stop. And of course, it's not even in the record that the secretary of state's office would have been taking phone calls on a Sunday evening or that the police officers squad car computers are capable of giving out that information. This court should reject the analysis of the second district's, uh, People v. Johnson decision because the standard advocated by that court is more stringent than that required for reasonable suspicion. Um, Johnson's standard would have required the officer to have more information about the RDP's terms before executing the stop. But that is illogical when you compare it with how the RDP information would be treated in a resulting criminal case. The language of the statute, the pattern during instructions, and lower court court case law show that the RDP isn't an element of the offense. It's actually an affirmative defense. Um, therefore, as Justice Thomas earlier pointed out, it would be illogical to require a police officer to have more information at the Terry stop stage than the prosecution would later be required to allege at the indictment stage and then prove beyond a reasonable doubt. Uh, the language of the statute and the case law show that it is an affirmative defense. If it were an element of the crime, the state would have had to allege it at the indictment stage and then prove it. Because it's an affirmative defense, the officer doesn't need to have reasonable suspicion about it before the stop. And this parallels the way that we treat affirmative defenses in other contexts. If an officer sees one person shoot another person, he doesn't necessarily have to go out and investigate possible affirmative defenses to murder before he executes a Terry stop to find out what's going on. This is true even if, as in this case, the officer might have some information that could lead someone to believe that there is a possibility of a valid affirmative defense. Even if the officer saw that the shooter was screaming at the moon and saying that the aliens were out to get him, he wouldn't have to investigate an insanity defense before he executes a Terry stop. Now, I would like to briefly address the forfeiture issue since defense counsel brought it up in his opener. Um, the state did not forfeit the statutory construction argument and the appellate court was correct in addressing it. Um, this court can take judicial notice of the briefs that were filed in the appellate court. And the state's brief on page seven states, and this is a direct quote, the above statutory scheme. And here they are referring to the driving while license revoked statute. The above statutory scheme shows that the reasonable articulable suspicion possessed by an officer to stop a vehicle operated by a person whose driving privileges are revoked is not dissipated by the officer's additional knowledge of an issuance of an RDP. They go on to argue the statutory scheme places the burden on the revoked driver to produce the RDP issue to him, which contains the specific restrictions under which defendant may drive. So this argument was raised to the appellate court. The appellate court ruled on it. Um, in addition, any forfeiture holding against the state would be inappropriate here. Uh, the defendant can't argue now that he was somehow taken by unfair surprise or that we were sandbagging him by raising this in our appellate's brief in this court. This was the basis of the appellate court's holding where the appellee were asking the score to affirm the appellate court. Uh, so it was appropriate for the appellate court to rule on this issue. If the court has no other questions, we would urge this court to affirm the judgment of the appellate court. Thank you. Your honors. Police court. Justice Thomas, to go back and answer some of your questions about the affirmative defense issue that you believe in this case, the affirmative defense has to do with the trial stage. We're not there at this particular point in time. Um, we're in a situation of whether or not the police had the reasonable   when you take a look at the trial, you have to look at the evidence. Um, let's take a look at also couldn't at the time of the stop, I'm sorry. Yes. At this time of the stop, the driver show the, the, uh, RDP to the officer with the expectation that he would be released if it was covering the, covering the situation. If in fact the person that the officer determines that the RDP is valid, uh, could let them go. I believe I was thought that the, um, question by justice Thomas had to do with the affirmative defense. And I believe that would have to be doing at the trial level. Maybe I misinterpreted the question that you raised at a jury trial, uh, about since he asked that the, um, it's not an element that the state must prove that a person has, or it does not have a restricted driving permit. And affirmative defense is at a trial stage. And this case is more, it would be true if he was charged with driving a suspended or driving on a suspended or revoked license. That's correct. And, and, and Mr. Close is charged with driving while revoked. Uh, and in this situation here, uh, it's not an affirmative defense because of the affirmative defenses are, you know, established by the code. And there is no, the Illinois criminal code has not established an affirmative defense with a restricted driving permit, nor looking at the IPI instructions. Is there anything whatsoever about, um, the situation where it is a defense to have, um, to raise at a trial? Because the section says that the illegal vehicle code at 625-5-6-303, except specifically allowed by a restricted driving permit. So if a person has a restricted driver's permit, uh, we would not get to the issue of a trial. So I don't believe that this is an affirmative defense. And maybe to follow up on Justice Burke's, um, question about stopping any vehicle, is our position that if the, take the third district's holding out to its logical conclusion, they can stop any vehicle to see whether or not the person is carrying their license, whether or not the person has a restriction and they're, you know, they're compliant with that restriction. It's getting, it's just random abuse stops that the police can have in a situation like this. And we believe that when you narrowly look at this case and the facts and circumstances, the officer did not have reasonable articulable suspicion in this case. The issue can be solved by providing the facts to the officer. It's not unreasonable to expect that if they can find out a person has a license, revoked other information, that they can have that information to allow them to then make a determined, an informed decision if they're outside those parameters of those permits. So based on. Can you give us an example of such facts? Uh, well again, as I said, if the officer, you know, receives information that he has a restricted driving permit, tells him what the terms and conditions are, and clearly it shows that the person is not within the times and distances, um, that does not allow them to stop the individual. If they're outside that individual, outside that period of time, yes, that would be a reasonable articulable suspicion that the in-person is not in compliance with RDP and would allow the officer to stop. I think it's kind of an interesting situation here because we're not talking about some type of criminal activity like burglary where the officer's looking and says, that looks like it's burglary. We're talking about a situation that a person driving, you know, it's hard to distinguish a person with a valid driver's license and a non-valid driver's license. Uh, but when you run a driver's license check and you find that they're revoked or they're not revoked, that's easy to know. But the situation we're talking about is in between when they have a restricted driving permit. The license may be categorized by revoke or they've initiated a restricted driving permit. This is a valid driving, uh, permit that allows them to drive on the roads of Illinois. For the police officers to just willy-nilly stop them on any hunch whatsoever to check, to ask to see the restricted driving permit, their papers, is unreasonable. And it's not, it's not, should be not upheld by this court because of the situation it, it allows for abuses by the system. Is that still a leading question on the hunch? I do not believe it was. First of all, the officer's an adverse witness. Second of all, the representative, uh, the state development or the state attorney's office was there and could have followed up with other questions for them to summarily say that that was a leading question. Uh, no, I disagree. The officer could have said, no, that is not a hunch. He said, yes, it was. I'm sorry, but did you, did you look at the record for that question by any chance? I, I, I did. And, um, did you find it? Um, I don't have it here at my, at my desk, at the podium here, but the officer did, when asked, the reason you stopped him was based on a hunch. He said, yes. All right. The, uh, officer could have said, no, that's not right. The reason I stopped him was for some other reason. The officer did not elaborate. Counselor, do we know if from the record in this case, whether the information, uh, was available to the officer, um, with the terms of the RDP? No. From the, I think from the record, we did not know, uh, if that information was available. Okay. However, when you take a look at the fact that it has an RDP, that raises another standard for the officer, just to say, to stop him, just to check. So, so, if we, uh, agree with you, we would be ordering, then, that they have to make that available, some way, to officers in the field, either modify all their computers, or, or, make a 24-hour hotline, or, I, I don't know what the remedy would be, but, would we be doing that? No, we would be not. It would be up to law enforcement to decide what action they would take. By upholding this rule, uh, with, upholding the third district case, it's just the opposite. By not knowing whatever the terms are, it's giving unbridled, uh, discretion to the police officer to stop every permit person, to verify whether or not they are in compliance with their permit, for no other reason other than the fact that they have a permit. The person's not committing any violations of the rule of the road. We have no idea whether or not they are in compliance, or not in compliance, but we're going to stop to see if they are in compliance. And I do not believe that the, um, Fourth Amendment of the Constitution for Unreasonable Search and Seizures, as well as, you know, Delaware v. Peruzza, to stop people to check to see what this is all about. So, it can easily settle by the officer, um, I mean, by the law enforcement deciding to provide that information. But if the third district case is upheld, there's no incentive for the law enforcement to ever request this information, because that would limit them to make stops of any person whatsoever. And, again, we start out with the proposition that the officers provided with individuals have driver's license. They're also provided information that the officers have restricted driving permits. This information all comes from the government. The government has all this, and it is a fact, and the fact of this case is that all this information that the officer had available, was from his laptop computer. He, himself, without contacting dispatch, found out that the registered owner was revoked, found out that the registered owner also had a restricted driving permit, and also had that person's picture to be able to identify that person. I mean, it's not unreasonable to assume that the information about the terms, if they have an RDP, it's not unreasonable to assume that the facts or the conditions in terms of that restricted driving permit cannot be made available to the officer. And if law enforcement decides, or the, you know, the other arms of the government decide that that information, they don't want to provide that, that's fine. It just stops all the local citizens from being stopped for unreasonable searches and seizures, without having a reasonable, articulable suspicion. Now, there may be other factors, as in that, you know. If law enforcement decided not to provide that information to anyone. I mean, if, if the court says that you cannot stop an individual without having the terms, conditions, restricted driving permit, it's then up to the, the state of Illinois to decide what, if action they want to take, they can resolve that issue by readily. My point is that, if they chose to say nothing about the restricted driving permit, and the person was driving along, and the policeman accessed the computer and got evidence that there was not driving on a suspended driver's license, he could stop, he could stop, couldn't he stop them without any concern of whether, whether there was a restrictive driving permit or not? I thought from the fact you said that, that the officer ran the plates, came up to the operator, and the owner is revoked or suspended. Right. That clearly gives them the right to stop that individual. No questions asked. But, if they find out that he has a restricted driving permit. Well, that's what I'm saying. Is law enforcement going to solve their problem by stopping, giving the information on restricted driving permits? I think that what it will do is it will make a better society from the standpoint the officers will not have unbridled discretion to stop any individual for any reason they think, based on a hunch, that they will have a reasonable articulable suspicion, that being the terms and conditions. When there is no information on, on the RDP? If there's no information on the RDP, again. You can't, you can't say to the police, you can't stop anybody. No, there has to be more. And, you know, there has to be more. I don't think you can have a blanket, you know, ruling that says that they cannot stop an individual, but there has to be more standards set forth other than an officer's hunch. And I say that that can be removed by having the information provided to the officers through their laptop computers. As I said, they can have a picture of the driver so they can compare to see who the driver is. They know he has a license. They know he's revoked. They know he has a restricted driving permit. It's not unreasonable to ask. We ask that the, the appellate court be reversed and the trial court affirmed. Thank you very much. Thank you, counsel. Case number 108459 will be taken up.